IN THE MATTER OF THE ESTATE OF KONRATH VOLK,
Deceased.
JOHN BISCHOF, Respondent, v. EVA FISCHER et al., Respondents,
and
ANTON VOLK et al., Appellants.

(214 N. W. 798.)

**Wills — residence of decedent in county where probate of will is sought.**
  The evidence is examined and held to support the findings of the trial court
  that the residence of the deceased, at the time of his death, was Emmons
  county.

Opinion filed July 9, 1927.

Wills, 40 Cyc. p. 1254 n. 6.

Appeal from an order of the District Court of Emmons County,
*McKenna,* J.

Affirmed.

*Emanuel Sgutt,* for appellants.

In a trial de novo, the findings of the trial court are not clothed with
the same presumptions in their favor, as in other cases. Merchants
Nat. Bank v. Armstrong, 54 N. D. 35, 208 N. W. 847; Doyle v. Doyle,
52 N. D. 380, 202 N. W. 860.

Domicile has a wider meaning than and includes residence. McEwen v. McEwen, 50 N. D. 662, 197 N. W. 862.

"The place of residence where a person actually lives is, prima facie,
presumed to be his legal residence." 19 C. J. 431.

"A residence in one place for a great number of years is a violent
and continuing proof of the animus monendi." White v. Brown, Fed.
Cas. No. 17,538.

*I. A. Mackoff* and *Charles Coventry,* for respondents.

"A domicile being established in the place it is presumed to have
continued there until the contrary is affirmatively shown, and the burden of proof is upon him who asserts the change." McEwen v. McEwen, 50 N. D. 662, 197 N. W. 862.

"Where a change of domicile is alleged the burden of proving it rests upon the person making the allegation. To constitute a new domicile two things are indispensable; first, residence in the new location; second the intention to remain there. Mere absence from home, however long continued, cannot work the change." Gardner v. Board of Education, 5 Dak. 263.

"The place of a person's death has very little bearing on the question of domicile." 19 C. J. 407.

Per Curiam. Konrath Volk died in Pierce county, this state, on September 27, 1925. Thereafter a petition was filed in the county court of Emmons county for probate of his last will. Some of the heirs who were not residing in Emmons county filed objections to the probate of the will in that county, on the ground that the deceased was not a resident of Emmons county, but was a resident of the county of Pierce at the time of his death. After a hearing upon the objections the county court found the deceased to have been a resident of Pierce county and dismissed the proceedings. An appeal was taken to the district court with the result that the order of the county court was reversed and the cause remanded with directions to proceed with the probate. The instant appeal is from this order of the district court. The following statement of facts taken from the memorandum opinion of the learned trial judge sufficiently presents the question to be decided:

"Most of the facts are not in dispute. It appears that the deceased, Konrath Volk, was born in South Russia in the year 1839, and came to the United States in the year 1888, and filed on a homestead near Hague, in Emmons county, in the year 1889, upon which homestead he and his family lived continuously until the year 1907. His wife died in the year 1901. The respondent, Anton Volk, moved to Pierce county about 1903. The deceased sold the old home place to his son, Frank Volk. Just what year the record does not disclose, but possibly some time prior to 1907, and Konrath Volk continued to make his home with Frank Volk on the old homestead in Emmons county until 1907, when he went to Pierce county to live with his son, Anton Volk. He was at that time sixty-eight years of age. All he took with him to

Pierce county were his trunk and clothing, his blankets and feather bed.

"Just how long he stayed with Anton Volk in Pierce county is not certain, but probably about three years; although a portion of this time he stayed with Pete Wentz, a son-in-law, also in Pierce county, and Gottlieb Klotz, another son-in-law, testifies that he visited him in Canada in 1905, and also in 1910.

"About the year 1911 he went back from Pierce county to the old homestead and lived with his son, Frank, and family until the year 1915.

"The petitioner, John Bischof, became acquainted with the old man in the year 1912. Mr. Bischof was in the banking business at Zeeland, and the old man appears to have had a great deal of confidence in Mr. Bischof and carried on his business affairs through him.

"At the time of the death of his son Frank, the deceased was seventy-six years of age. He stayed with his daughter-in-law, Eva Volk and the grandchildren for about a month after his son's death, and then went to Anton Volk's home in Pierce county. This was about September, 1915.

"He stayed with Anton Volk in Pierce county until the year 1917. Then he went to live with his daughter and son-in-law, Pete Wentz, and then moved into Harvey, in Wells county, and lived with an uncle of Anton Volk.

"In the year 1920 Konrath Volk, went back to Hague to live with his daughter-in-law, Eva Volk, and the grandchildren on the old homestead, and stayed there three years, until about the 30th or 31st of July, 1923. He was now eighty-four years of age.

"About this time he wrote to his son-in-law, Gottlieb Klotz, living in Saskatchewan, Canada, and asked him to come down and get him. Mr. Klotz went to Hague and took the old gentleman to Canada. He made his home then in Saskatchewan with Gottlieb Klotz and the old gentleman's daughter, Regina Klotz, until the 2d day of June, 1924, when he sent word to Anton Volk that he wanted to come back to North Dakota; and Mrs. Anton Volk went to Saskatchewan and got the old gentleman and brought him back to Pierce county. He lived at Anton Volk's place from June, 1924, until about May, 1925, and then, Mrs. Anton Volk being ill, the old gentleman was removed to his daughter's

home, Mrs. Phillipina Wentz and her husband, Peter Wentz, also in Pierce county, where the old man stayed until he died, on the 27th of September, 1925.

"In June, 1924, the same month that the old gentleman returned from Canada to Pierce county, he made a trip to Hague and to his old home there, stayed overnight with his daughter-in-law, Eva Volk, and next day went into Zeeland and there had a talk with the petitioner, John Bischof.

"At that time a will which he had made in 1923 was destroyed and a new will made, the one which is in evidence here.

"At that time all of the old gentleman's money was on deposit in Mr. Bischof's bank in Zeeland in the form of certificates of deposit. The old gentleman took the interest on the certificates, renewed the same and left his money in the bank at Zeeland, and also the new will. He then went back to Pierce county with his son, Anton Volk, and did not visit Hague or Zeeland again.

"In the year 1925, a few months before his death, he wished to renew his certificates of deposit at the bank in Zeeland, but Mr. Bishof told him that they would not renew them at 6 per cent interest, and would pay only 5 per cent. The old gentleman then removed his money from the bank in Zeeland and deposited it in a bank at Esmond, North Dakota, but the will remained in the bank at Zeeland until his death."

The question involved is one of fact; that of the residence of the testator at the time of his death. Comp. Laws 1913, § 8526. The rules of law for the determination of residence and the legal definition of the term are so elementary as not to require discussion here. The trial judge, however, after a more or less detailed reference to the statutes and to authoritative expressions, placed the following interpretation on the facts in this case:

"Applying these rules of law and of evidence to the facts in the instant case, the court thinks it will be conceded by all parties that on the 30th or 31st day of July, 1923, Konrath Volk was a resident of, and had his legal domicile in, the county of Emmons, and state of North Dakota. No matter what visits he had previously made to his children in Pierce county, or in Wells county, or in Canada, he had actually been living on his old farm homestead with his daughter-in-

law, Eva Volk, near Hague, in Emmons county from 1920 to 1923, a period of three years. At that time every particle of personal property that he owned in the world was in Emmons county, or in the immediate vicinity. He was then eighty-four years of age. He evidently desired to go to his daughter, Regina Klotz, in Canada, because at that time he writes her a letter asking her to come and get him, and Mr. Klotz makes a trip from Saskatchewan to Hague and takes the old man back with him.

"There is no claim by anyone in this law suit, either counsel for appellants or respondents, that when the old gentleman left Hague in 1923 to go to Saskatchewan that he had any intention of changing his residence or his domicile, because Mr. Klotz testifies that he told the old gentleman that he could not take any bedding with him into Canada, because the Canadian authorities would not permit him to enter if they thought he intended to do so permanently, and that he told the Canadian officials that he was merely making a visit.

"Konrath Volk remained in Saskatchewan until the 2d day of June, 1924, a period of about eleven months. During those eleven months, where was his residence and his legal domicile? Why patently at Hague, in Emmons county. The rule of law is that once a domicile is established, that domicile remains until a new one is obtained, and that the intention to change the domicile must be clear and express; that the change of a legal domicile is a grave and serious matter, and the court should not deem it changed upon mere trivial circumstances.

"The evidence discloses that in June, 1924, after he returned from Canada to Pierce county that his son, Anton Volk, took him to Hague, and that he there stayed over night with his daughter-in-law, Eva Volk, on the old home place. Four witnesses testify that the old gentleman stated that he was going to visit another daughter, and then would come back to Hague to die. These witnesses are John Bischof, Nick Fischer, Steve Wenninger and Eva Volk.

"While at Hague in 1924 he goes to Zeeland and to Mr. Bischof. The old will which he had drawn in 1923 was destroyed, and the new will, the one in suit, was made. At that time all of his money was on deposit in Mr. Bischof's bank in Zeeland. He merely drew the interest

and left the balance of the money there, receiving certificates of deposit. So, when he went back with Anton Volk about the 1st of July, 1924, to Pierce county, with the exception of some bedding and his clothing, all the property that he owned was really in McIntosh county, in the vicinity of his old home, and in charge of a person with whom he had had long business relations, and in whom he reposed confidence.

"Is there anything in the testimony which shows an intention upon the part of Konrath Volk, on July 1st, 1924, to permanently change his residence and domicile from Emmons county to Pierce county? Aside from the fact that he went to Pierce county to stay with his son Anton, and also the testimony of Mrs. Anton Volk that he told her in Canada that he was going back to live with her until he died, we have no extrinsic proof.

.    .    .    .    .    .    .    .

"It is true that the old gentleman took his money out of the Zeeland bank in 1925, a short time before his death, and deposited it in the bank at Esmond, North Dakota. The only reason for such change, however, was that he was securing 6 per cent interest at the Esmond bank, while the Zeeland bank would only pay 5 per cent, and the Zeeland bank had previous to that time paid 6 per cent. He did not withdraw his will from the Zeeland bank, nor did he change his executor. And when we consider that the old gentleman was eighty-six years of age, perhaps the influence of his children in Pierce county had something to do with the removal of that money.

"The court is inclined to think that the legal domicile of Konrath Volk at the time of his death was in Emmons county, and even though the question is a close one, still the court is satisfied that the rule of law is that where the testimony is about equally balanced the court should resolve the question in favor of the original domicile. Outside of his children, the old gentleman had no interest in Pierce county. He never voted there. He never transacted any business there. A donation of $50 to the Catholic Church at Sells, North Dakota, is not important, because a member of the Catholic Church in one locality is a member wherever he goes, and contributes wherever he goes. And I presume if the old gentleman had gone to one of his children in another state, say Wisconsin, he would have contributed to the Catholic

Church there, and that incident alone does not show any intention of changing his residence permanently.

"It would seem to the court, too, that the best interests of the estate would be served by permitting the county court of Emmons county to take jurisdiction. It is much easier for the executor, Mr. Bischof, to transact business at Linton than to go to Pierce county, and it will be much easier for the executor, Mr. Bischof, to transact business at Linton than to go to Pierce county, and it will be much less expensive for the heirs. The estate is all personal property, it is all cash or notes, and can easily be transferred from Pierce county to the executor at Zeeland. No possible injury can be done the respondents by permitting the jurisdiction to remain where it was originally instituted, namely, in Emmons county."

We are satisfied from a reading of the record that the findings of the trial court find ample support in the testimony that we would not be warranted in overturning them. The order appealed from is affirmed.

BIRDZELL, Ch. J., and BURR, BURKE, CHRISTIANSON, and NUESSLE, JJ., concur.